# EXHIBIT "1"

**PROPOSAL REGARDING POTENTIAL MURDER, INC., LLC**
**CHAPTER 11 PLAN OF REORGANIZATION**

JVLV Holdings, LLC ("JVLV") hereby submits this non-binding *Proposal Regarding Potential Murder, Inc., LLC Chapter 11 Plan of Reorganization* dated October 17, 2011 (the "Proposal"), for discussion purposes only and as a basis for further negotiations regarding formulation of a possible Chapter 11 plan of reorganization (the "Plan") for Murder, Inc., LLC (the "Debtor") to be proposed by the Debtor in conjunction with a Chapter 11 bankruptcy filing by the Debtor in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). Specifically, JVLV proposes the following Plan terms and conditions, subject to the negotiation, drafting, and execution of the Plan and other related pleadings and documents:

1. Overview of Plan:

    The Plan will provide that substantially all of the Debtor's assets, other than claims and causes of action not released pursuant to the Plan and collateral retained by secured creditors pursuant to the Plan, will be transferred pursuant to Sections 363(b) and (e) and 1123(a)(5)(D) free and clear of all liens, claims, and interests to a newly established entity ("NewCo") in satisfaction of the DIP Financing (as defined below), satisfaction of certain secured debts and release of related liens, and receipt of up to $2,425,000 in cash to be used to make specified Plan payments.

    NewCo, which will be established by JVLV prior to confirmation of the Plan, will have the following classes of equity: (a) Class A voting membership interests (57.5% of NewCo); (b) Class B non-voting membership interests (10% of NewCo); (c) Class C voting membership interests (12.5% of NewCo); and (d) Class D voting membership interests (20% of NewCo). JVLV will agree that the equity of NewCo will be distributed as follows: (i) all Class A membership interests will be distributed *pro rata* to those participating in making necessary capital contributions to NewCo; (ii) all Class B membership interests will be distributed to certain secured creditors pursuant to the Plan; (iii) all Class C membership interests will be distributed pursuant to the Plan to claimants holding general contractor claims; and (iv) all Class D membership interests will be retained by JVLV in consideration for, among other things, facilitating the Plan process, funding pre-petition professional fees incurred by the Debtor, and backstopping the DIP Financing and the other necessary capital contributions to NewCo. Class A and Class C membership interests will receive the following preferential distributions from NewCo: (1) Class A membership interests in the amount of the capital contributions described in clause (i) above, and (2) Class C membership interests in the amount of $2,050,000. It is anticipated that the initial required capital contributions to NewCo subject to the Class A preference and necessary to, among other things, fund the repayment of the DIP Financing, the up to $2,425,000 payment to the Debtor, and future operational expenses (*i.e.*, post-confirmation expenses), will be in an amount of up to $4,000,000.

2. Plan Definitions. The definitions as provided for in the Plan shall include the following:

    a. Confirmation Order. The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

FTL 108,373,723v12 10-17-11                              1

    b.    <u>Effective Date</u>. The day that is no earlier than the fifteenth (15th) day after the Confirmation Order is docketed and after which the conditions as set forth in the Plan have been satisfied or waived.

    c.    <u>General Unsecured Claim</u>. Any pre-petition claim against the Debtor that is not an Administrative Expense Claim, Priority Tax claim, Priority Non-Tax Claim, Secured Tax Claim, Secured Note Claim, Secured General Contractor Claim, Secured Subcontractor Claim, or Other Secured Claim.

    d.    <u>Secured Note Claims</u>. Claims arising out of pre-petition notes given by the Debtor that are secured by properly perfected first-priority liens against the Debtor's assets.

3.    <u>Plan Treatment of Unclassified Claims</u>:

    a.    <u>Administrative Expenses</u>: Holders of allowed administrative expense claims (including compensation and reimbursement of the Debtor's professionals not in excess of $200,000 (including all pre-petition amounts held on retainer by the Debtor's professionals), and, in the event an unsecured creditors' committee is appointed, an amount not in excess of $50,000 for compensation and reimbursement of the committee's professionals), and U.S. Trustee fees, will be paid in full on the later of (i) the Effective Date of the Plan, and (ii) the date on which such claims become allowed.

    b.    <u>Priority Tax Claims</u>: Holders of allowed priority tax claims will receive (i) payment in full in cash in the amount of up to $100,000 with regard to such claims incurred between July 2011 and the Petition Date on the later of (1) the Effective Date of the Plan, and (2) the date on which such claims become allowed, and (ii) with regard to all other claims incurred prior to July 2011, regular installment payments in cash, over a period ending not later than five (5) years after the petition date, of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claims.

4.    <u>Plan Classification and Treatment</u>:

    a.    <u>Class 1 (Priority Non-Tax Claims)</u>: Holders of allowed priority non-tax claims will be paid in full on the later of (i) the Effective Date of the Plan, and (ii) the date on which such claims become allowed. It is anticipated that Class 1 Priority Non-Tax Claims will be in amount of less than $25,000. Class 1 will be unimpaired and not entitled to vote on the Plan.

    b.    <u>Class 2 (Secured Tax Claims)</u>: Holders of allowed secured tax claims will receive either (i) payment in full in cash of such claims on the later of (1) the Effective Date of the Plan, and (2) the date on which such claims become allowed, or (ii) regular installment payments in cash, over a period ending not later than five (5) years after the petition date, of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claims. Class 2 will be unimpaired and not entitled to vote on the Plan.

c. <u>Class 3 (Secured Note Claims)</u>: Secured Note Claims secured by the same lien will be classified together in their own sub-class under Class 3. Holders of allowed Secured Note Claims shall receive either: (i) in the event a majority in number and two-thirds in amount of holders of allowed Secured Note Claims elect to receive distribution of equity in NewCo, all holders of allowed Secured Note Claims will receive on the Effective Date, in full and complete satisfaction of their allowed secured claims against the Debtor, a *pro rata* distribution of the Class B membership interests in NewCo, with any deficiency claim being treated as a Class 7 General Unsecured Claim (the "<u>Equity Election</u>"), or (ii) in the event that the requisite number of holders of allowed Secured Note Claims does not make the Equity Election, all holders of allowed Secured Note Claims will receive a *pro rata* distribution of $250,000 in full satisfaction of their allowed secured claim, with any deficiency claim being treated as a Class 7 General Unsecured Claim. All liens of such creditors against the Debtor's assets will be released as of the Effective Date. In the event that holders of Secured Note Claims cannot agree, by the Confirmation Date, upon allocation of the distribution to be made under either option (i) or (ii) above, the Bankruptcy Court shall resolve any such disputes after the Effective Date. Each subclass of Class 3 will be impaired and entitled to vote on the Plan.

d. <u>Class 4 (Secured General Contractor Claims)</u>: The holder of the allowed general contractor claims secured by properly perfected mechanic/materialmen liens against the Debtor shall receive on the Effective Date in full and complete satisfaction of its pre-petition secured claims against the Debtor (i) $350,000 in cash, and (ii) all Class C membership interests in NewCo. The holder agrees to waive its Section 363 credit bid right and further agrees to release and waive all mechanic/materialmen liens of such creditor as of the Effective Date. Class 4 will be impaired and entitled to vote on the Plan.

e. <u>Class 5 (Secured Subcontractor Claims)</u>: Holders of properly perfected mechanic/materialmen liens and related claims shall receive in consideration for the release and waiver of such mechanic/materialmen liens and all claims related thereto 75% of the allowed amount of their Class 5 claims, provided that the aggregate amount paid to holders of allowed Class 5 claims shall be capped at $1,650,000. The holders agree to waive their Section 363 credit bid rights and further agree to release and waive all related mechanic/materialmen liens of such creditors as of the Effective Date. In the event that the holders cannot agree upon allocation of the distribution by the Confirmation Date, the Bankruptcy Court shall resolve any such disputes after the Effective Date. Class 5 will be impaired and entitled to vote on the Plan.

f. <u>Class 6 (Other Secured Claims)</u>: Each Other Secured Claim will be in its own sub-class under Class 6. Each sub-class shall be treated similarly. Each holder of an allowed Other Secured Claim will receive a *pro rata* distribution, up to the allowed amount of its claim, of $50,000 in full satisfaction of its allowed secured claim, with any deficiency claim being treated as a Class 7 General Unsecured Claim. All liens of such creditors will be released on the Effective Date. Class 6 will be impaired and entitled to vote on the Plan.

    g.    <u>Class 7 (General Unsecured Claims)</u>: Holders of allowed general unsecured claims against the Debtor will receive, without interest, *pro rata* distribution of the net proceeds of a liquidation trust to be established for the benefit of holders of allowed Class 7 claims. Class 7 will be impaired and entitled to vote on the Plan.

    h.    <u>Class 8 (Equity Interests)</u>: Holders of equity interests in the Debtor will receive no distribution on account of such interests and such interests will be deemed withdrawn and cancelled as of the Effective Date. Class 8 is impaired and holders of interests in the Debtor will be deemed to have rejected the Plan.

5.    <u>Additional Plan Provisions</u>:

    a.    <u>Debtor-in-Possession Financing</u>: Debtor-in-possession financing will be provided by JVLV (or an entity affiliated with it) and others willing to jointly participate therein in an amount up to $375,000 (which includes the up to $100,000 included in Paragraph 3.a. above allocated for payment of the Debtor's professionals and, in the event an unsecured creditors' committee is appointed, up to $50,000 for payment of the committee's professionals, and up to $15,000 for payment of U.S. Trustee fees), at 12% interest per annum, pursuant to the terms of budget agreed upon by the Debtor and the parties thereto, less amounts advanced and used prior to the Debtor's bankruptcy filing to pay Debtor's professionals (the "<u>DIP Financing</u>"). It is anticipated that such financing will be repaid in full pursuant to the Plan through, in part, the transfer of substantially all of the Debtor's assets to NewCo pursuant to the Plan. Any amounts funded prior to the Debtor's bankruptcy filing by JVLV for payment of the Debtor's professionals that remain in the retainer accounts of the Debtor's professionals on the date of the filing of the Debtor's bankruptcy case, and not otherwise credited to payment of the Debtor's professional fees and expenses incurred during the Debtor's bankruptcy case, shall constitute collateral under the DIP Financing.

    b.    <u>Transfer of Assets to NewCo</u>: On the Effective Date, substantially all of the assets of the Debtor, except for claims and causes of action not released pursuant to the Plan, will be transferred free and clear of all liens, claims, and interests to NewCo in satisfaction of the DIP Financing, satisfaction of allowed Class 3, 4, 5, and 6 claims and the release of all related liens, and receipt of up to $2,425,000 in cash to be used to make specified Plan payments.

    c.    <u>Liquidation Trust</u>. On the Effective Date, a liquidation trust will be established and all claims and causes of action held by the Debtor, except any claims and causes of action against the Tropicana, holders of the DIP Financing, and holders of Class 3 and 4 claims under the Plan (which claims and causes of action will be released pursuant to the Plan), shall be transferred to such trust to be pursued for the benefit of holders of Class 7 claims.

    d.    <u>Modification of the Tropicana Lease</u>: On the Effective Date of the Plan, the Tropicana lease will be modified and amended on mutually agreeable terms as summarized in <u>Schedule "A"</u> hereto.

e.  <u>Assumption of Executory Contracts and Unexpired Leases</u>: On the Effective Date of the Plan, all executory contracts and unexpired leases to which the Debtor is a party, including the modified Tropicana lease, that are set forth on an exhibit to the Plan will be assumed by the Debtor and assigned to NewCo, with all executory contracts and unexpired leases not included on such list being deemed rejected as provided for in the Plan.

This Proposal is not binding and has no legal effect whatsoever. Neither this Proposal nor any party's execution hereof shall constitute an obligation or commitment of any kind or give any party any rights or claims against another party in the event such party for any reason terminates negotiations related to the Proposal or the Plan. All obligations or commitments to proceed with the Proposal shall be contained only in a confirmed Chapter 11 plan of liquidation and other necessary documentation. This letter shall be governed by and construed in accordance with the laws of the State of Nevada (excluding the provisions of such laws regarding conflicts of law) and may not be amended or modified except in writing signed by each party hereto.

**PROPOSED BY:**

By: _[signature]_
Name: JOHN VIPULIS
Title: Managing Member

## Schedule "A"

Modified Tropicana Lease Terms

# Schedule "A"

## Modified Tropicana Lease Terms

| | |
|---|---|
| Lease Term | Ten (10) years from the execution of the new Lease (the "Commencement Date") [the confirmation date] with a single five (5) year renewal term at the Tenant's option. |
| Rent | (a) 10% of Gross Sales until December 31, 2013, which amount shall be deferred until JVLV has recovered its investment of $3,750,000 and MJ Dean has recovered its investment of approximately $2,500,000; all such deferred rent shall be paid as set forth in clause (c) below; |
| | (b) 10% of Gross Sales from January 1, 2014, which amount shall be paid on a current basis until JVLV and MJ Dean have recovered their investments as set forth in clause (a) above; |
| | (c) after JVLV and MJ Dean have recovered their investments as set forth in clause (a) above, 20% of Gross Sales paid on a current basis until the Landlord has recovered (i) all unpaid rent and other amounts due under the Lease at the time of the Commencement Date up to $500,000 together with interest on such amount computed at 8% per annum commencing on the Commencement Date, and (ii) all unpaid rent and other amounts accrued from Commencement Date, including rent deferred pursuant to clause (a) above; and |
| | (d) 10% of Gross Sales paid on a current basis thereafter. |
| Utilities & Services | Same as provided for in Section 7.1 of the Lease. |
| Marketing Support | Landlord will provide, at its cost other than out-of-pocket costs paid to third parties (such as production costs), all in-house and exterior property advertising of the LVME. Tenant will provide Landlord with 2 complimentary tickets to the LVME for each "Hotel Package". |
| Termination by Landlord | Landlord will have the right to terminate the Lease upon ninety (90) days' written notice if there are less than __ paid visitors per month to the LVME for three (3) consecutive months in any period after January 1, 2013. |
| Conditions to effectiveness: | All mechanics' and materialmens' liens on Landlord's property as a result of LVME construction or operations shall be permanently removed and released with prejudice. |
| | Confirmation of the Plan to occur on or before January 15, 2012. |
| | Release by debtor and all plan parties of all claims against Landlord. |

FTL 108380855v4