GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Proposed Attorneys for Murder Inc., LLC

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In re:              | Case No.: BK-S-11-26317-BAM |
|---------------------|-----------------------------|
|                     | Chapter 11                  |
| MURDER INC., LLC,   |                             |
| Debtor.             | Date:  OST PENDING          |
|                     | Time:  OST PENDING          |

**MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL ORDERS:
(1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING,
(2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE
STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING AND
PRESCRIBING THE FORM AND MANNER OF NOTICE FOR A FINAL HEARING**

Murder Inc., LLC, a Nevada limited liability company ("Murder" or "Debtor") hereby submits its motion (the "Motion") for entry of an interim order (the "Interim Order," a copy of which is attached hereto as **Exhibit "A"** and is incorporated herein by reference) and a final order (the "Final Order"): (1) authorizing the Debtor to obtain post-petition financing pursuant to Sections 105, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code") by entering into that certain Debtor-in-Possession Loan and Security Agreement (the "DIP Agreement") by and among the Debtor and JVLV Holdings, LLC (the "Post-Petition Lender"), a copy of which is attached hereto as **Exhibit "B"**, together with any related notes, as the same

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

may be amended, supplemented, or otherwise modified from time to time, and all instruments, agreements, assignments, and other documents referred to therein or herein or requested by the Post-Petition Lender to give effect to the terms thereof and hereof (the DIP Agreement and such other instruments, agreements, assignments, and other documents, as at any time amended, substituted, or restated, being collectively called the "DIP Financing Documents"), all subject to the terms and conditions set forth herein and therein; (2) granting certain liens and super-priority administrative expense status to the Post-Petition Lender as specifically set forth herein, in the DIP Agreement, the Interim Order, and the Final Order pursuant to Sections 364(c)(1), (c)(2), (c)(3), and (d)(1) of the Bankruptcy Code; (3) modifying the automatic stay pursuant to Section 362(d) of the Bankruptcy Code; and (4) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and all applicable local bankruptcy rules, scheduling a final hearing (the "Final Hearing") and approving notice with respect thereto.

This Motion is made and based on the *Omnibus Declaration of Louis Ventre in Support of the Debtor's First-Day Motions and Other Relief* (the "Omnibus Declaration"), the papers and pleadings on file herein, judicial notice of which are respectfully requested, and any arguments of counsel entertained by the Court at the time of any hearings on this Motion.

## I.
## BANKRUPTCY RULE 4001 CONCISE STATEMENT

1. By this Motion, the Debtor requests:[1] (a) entry of the Interim Order and the Final Order authorizing the Debtor: (i) to obtain post-petition financing pursuant to Sections 363 and 364 of the Bankruptcy Code by entering into the DIP Agreement; (ii) to grant liens and super-priority claims to and on behalf of and for the benefit of the Post-Petition Lender in certain Post-Petition Collateral to secure the DIP Obligations; and (iii) pending a final hearing, to and including the date on which the Final Order is entered, to obtain emergency post-petition loans and financing in the amount of $95,588 (through November 13, 2011);[2] and (b) in accordance

---

[1] The following is a brief summary only, and nothing herein is intended or should be construed as altering or amending the DIP Agreement.

[2] Per the Budget, this amount may be more or less depending on when the Final Hearing is scheduled by the Court.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

2

with Bankruptcy Rule 4001(c)(2), that this Court schedule the Final Hearing and approve notice with respect thereto.

2. The material provisions of the proposed debtor-in-possession financing are summarized as follows:

    a. **Borrower**: The Debtor (Murder, Inc., LLC). See DIP Agreement, p. 1.

    a. **Lender**: The Post-Petition Lender (JVLV Holdings, LLC). See id.

    b. **Commitment**: A Maximum Amount of up to $375,000, which amount shall include a reserve of approximately $17,000 to be used in the sole and absolute discretion of the Post-Petition Lender. See id. at p. 6, and §§ 2.1 and 2.2(c).

    c. **Termination Date**: The earliest to occur of (i) January 30, 2012, (ii) an Event of Default and the DIP Agreement is terminated in accordance with Section 9.2 thereof, (iii) the effective date of the Plan, (iv) the Plan and accompanying Disclosure Statement (each referenced in the DIP Agreement) are not filed within five (5) Business Days of the entry of the Interim Order, (v) the Interim Order is not entered by the Bankruptcy Court within five (5) Business Days of the Petition Date, and (f) the Final Order is not entered within fifteen (15) days of the filing of this Motion unless otherwise agreed by the Post-Petition Lender. See id. at pp. 7-8.

    d. **Purpose**: The proceeds of the DIP Loan are to fund operations of the Debtor throughout its bankruptcy case and through a disposition of substantially all of the Debtor's assets pursuant to a Chapter 11 plan. See id. at § 6.8.

    e. **Priority and Liens**: All amounts owed by the Debtor under the DIP Agreement at all times will be collateralized by:

        i. Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first-priority lien, subject only to the Carve-Out, in all unencumbered assets of the Debtor;

        ii. Pursuant to Sections 364(c)(3) of the Bankruptcy Code, a perfected junior lien in all assets of the Debtor that are subject to a valid and unavoidable encumbrance in existence as of the Petition Date or that are subsequently

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

3

perfected pursuant to Section 546(b); and

        iii.    Pursuant to Section 364(d)(1) of the Bankruptcy Code, a first-priority, senior priming lien on all monies and funds of the Debtor which may be due, refunded, collected, or otherwise received by the Debtor pursuant to that certain Legal Representation Agreement dated September 29, 2011, by and between the Debtor and Gordon Silver.

In addition, the Post-Petition Lender will be granted a super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out.

See id. at §§ 2.6, 3.3, and 4.1; Interim Order, ¶¶ F-H, and 5.

    f.    **Carve-Out**: The liens and securities interests granted to the Post-Petition Lender will be valid, enforceable, and perfected security interests and liens, but shall be subject and subordinate to allowed claims of professionals of the Debtor and any official committee appointed in this case, to the extent such claims are set forth in the proposed budget attached to the DIP Agreement as **Exhibit "A"** thereto (the "Budget"), but in no event shall the aggregate amount thereof exceed (a) the aggregate of all sums held in pre-petition retainer by Gordon Silver together with a sum not to exceed $100,000, to the extent that such fees and disbursements are allowed by the Court, and (b) in the event that an unsecured creditors committee is appointed in this case, a sum not to exceed $50,000 for fees and disbursements of its professionals allowed by the Court together with any administrative expense allowed pursuant to Section 503(b)(3)(F) of the Bankruptcy Code (collectively, the "Carve-Out"). See DIP Agreement, p. 2, and §§ 2.6 and 3.3; Interim Order, ¶ 6.

    g.    **Interest**: Interest on the Loans and other DIP Obligations shall accrue at a fixed rate of twelve percent (12%) per annum; or, after the occurrence of an Event of Default, a fixed rate of eighteen percent (18%) per annum. See DIP Agreement, p. 5, and § 2.3.

    h.    **Events of Default**: The Events of Default are set forth in Section 9.1 of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

4

the DIP Agreement.

      i.    **Waiver of Applicable Non-Bankruptcy Law Relating to Perfection**: The Interim Order is deemed to be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted therein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the subject collateral, or other act to validate or perfect such security interest or lien. See DIP Agreement § 4.2(f); Interim Order, ¶ 9.

      j.    **Relief From Automatic Stay**: The automatic stay provisions of Section 362 of the Bankruptcy Code are modified and vacated to the extent necessary to enforce certain remedies against the Post-Petition Collateral, without having to obtain any further order of the Bankruptcy Court. See DIP Agreement §§ 9.2(e) and 10.1(b); Interim Order, ¶ 14.

      k.    **Application of Proceeds of Collateral**: The Debtor shall use the proceeds of all loans made pursuant to the DIP Agreement and all other accommodations made by the Post-Petition Lender for the Debtor for only those purposes described on the Budget, and not for any purpose prohibited by law or by the terms and conditions of the DIP Agreement, any of the DIP Financing Documents, the Interim Order, or the Final Order; and expressly excluding use of the proceeds (including the Carve Out) for the investigation or prosecution of any claim and/or cause of action against the Post-Petition Lender, including, but not limited to, any and/or all claims and causes of action arising (i) under Sections 549 and/or 550 of the Bankruptcy Code; (ii) under a theory of equitable subordination or recharacterization; or (iii) that challenges the DIP Obligations or the security interests granted pursuant to the DIP Financing Documents, the Interim Order, or the Final Order. See DIP Agreement, § 6.8; Interim Order, ¶ 12(b).

      l.    **Waiver of Section 506(c) Surcharge**: Subject to entry of the Final Order, the Debtor shall not assert a claim under Section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, or

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

5

enhancement of, or realization by the Post-Petition Lender upon the Post-Petition Collateral. See DIP Agreement, § 4.5; Interim Order, ¶ 7.

    m.    **Indemnification**. The Debtor agrees to indemnify and hold harmless the Post-Petition Lender and all other related parties from and against the use or contemplated use of the proceeds of any of the Loans, any transaction contemplated by the DIP Agreement, or the other Loan Documents, and any administrative or investigative proceeding by any governmental agency arising out of or related to a claim, demand, action, or cause of action related to the foregoing, among other matters. See DIP Agreement, § 10.3.

## II.
## STATUS OF THE CASE AND JURISDICTION

3. On October 17, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 the Bankruptcy Code. The Debtor has continued in the possession of its property and is operating and managing its businesses as a debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for a trustee or examiner has been made and no creditors' committee has yet been appointed in this case. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (D) and (O). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein are Sections 105(a), 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004, and 9014, and LR 4001(b).

## III.
## BACKGROUND

6. The Debtor was formed to finance, construct, and operate an exhibit known as the Las Vegas Mob Experience (the "LVME") within the Tropicana Las Vegas Hotel & Casino in Las Vegas, Nevada.[3] When it originally opened, the LVME was a live interactive entertainment

---

[3] A more detailed factual background of the Debtor's business and operations is more fully set forth in the Omnibus Declaration.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

6

adventure that includes the world's largest collection of organized crime artifacts from famous reputed mobsters. As of September 12, 2011, and as a cost-cutting measure, the LVME has scaled back its operations to only the museum portion of the LVME, which displays the artifacts.

7. Prior to the Petition Date, the Post-Petition Lender made certain loans and other extensions of credit to the Debtor pursuant to and in accordance with the terms and conditions of certain promissory notes, security agreement, and related documents (collectively, the "Notes"). The Notes evidence (a) that the amounts advanced to or for the benefit of the Debtor by the Post-Petition Lender pursuant to the Notes and remaining unpaid as of the Petition Date is an amount not less than $2,250,000, plus all related accrued interest, costs, and fees (collectively, the "Pre-Petition Claims"), and (b) without prejudice to a committee or any other party appointed by this Court with authority to assert such rights, validly perfected liens and security interests in, among other things, substantially all of tangible and intangible assets of the Debtor as more fully described therein. Without prejudice to the rights afforded herein to any committee appointed in this case or any other party appointed by this Court with authority to assert such rights (e.g., an examiner or trustee), the Pre-Petition Claims of the Post-Petition Lender are valid, existing, legally enforceable claims evidenced by the Notes executed and delivered to the Post-Petition Lender by the Debtor prior to the Petition Date and the obligations arising pursuant to the Notes are genuine, valid, existing, binding, and legally enforceable obligations of the Debtor, as provided therein.

## IV.
## RELIEF REQUESTED

The Debtor hereby requests entry of the Interim Order, the scheduling of a final hearing, and, after such hearing, the entry of a Final Order granting the following relief, all as more specifically enumerated above in the introductory paragraph of this Motion.

**A.    The Debtor's Need for Financing.**

The Debtor requests authority to obtain post-petition financing from the Post-Petition Lender. The requested relief is necessary for the Debtor to continue the operation of its business as a debtor-in-possession, to preserve the going-concern value of its assets, and to minimize the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

7

disruption of the Debtor as a going concern. The Debtor will suffer immediate and irreparable harm unless it is immediately authorized to obtain financing in the amount and on the terms and conditions set forth in the Interim Order and in the DIP Financing Documents.

Despite diligent efforts, the Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code.

Subject to the terms and conditions set forth in DIP Financing Documents and the Interim Order, the Post-Petition Lender is willing to make advances to the Debtor in the aggregate amount of up to $375,000, which includes a reserve of approximately $17,000 if necessary (the "DIP Loan") to enable the Debtor to continue to operate as a going concern.

**B.     Summary of Relief Sought.**

The Debtor seeks authorization to obtain, on an emergency basis, secured, super-priority post-petition financing on terms as outlined in the DIP Agreement substantially in the form attached hereto as **Exhibit "B"** and incorporated herein by reference. Specifically, the Debtor seeks the entry of the Interim Order and Final Order authorizing (a) the Debtor to enter into the DIP Agreement, (b) obtain the DIP Loan from the Post-Petition Lender, (c) to pay all interest, fees, expenses, and other obligations provided for under the Interim Order and the DIP Financing Documents, and (d) to satisfy all conditions precedent and perform all obligations thereunder in accordance with the terms thereof.

A condition to the willingness of the Post-Petition Lender to fund the DIP Loan is that, as security for the prompt payment and performance of the DIP Loan and all interest, fees, expenses, and charges at any time payable by the Debtor under the Interim Order (collectively, the "DIP Obligations"), the Post-Petition Lender receives:

    a.     Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first-priority lien, subject only to the Carve-Out, in all unencumbered assets of the Debtor;

    b.     Pursuant to Sections 364(c)(3) of the Bankruptcy Code, a perfected junior lien in all assets of the Debtor that are subject to a valid and unavoidable encumbrance in existence as

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

8

of the Petition Date or that are subsequently perfected pursuant to Section 546(b); and

   c. Pursuant to Section 364(d)(1) of the Bankruptcy Code, a first-priority, senior priming lien on all monies and funds of the Debtor which may be due, refunded, collected, or otherwise received by the Debtor pursuant to the Engagement Agreement.

  The liens described in items (a) through (c) above shall hereinafter be referred to as the "Post-Petition Liens," and the Debtor's assets subject to the Post-Petition Liens, subject to the Carve-Out, shall hereinafter be referred to as and shall constitute "Post-Petition Collateral." Notwithstanding the foregoing provisions, the Post-Petition Liens shall not attach to any of the following property: (i) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (ii) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtor's estate (collectively, the "Avoidance Proceeds").

  Pursuant to the Interim Order, all DIP Obligations will be granted administrative priority in accordance with, and shall constitute an allowed super-priority claim (the "Super-Priority Claim") pursuant to the provisions of Section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's bankruptcy case of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar section of the Bankruptcy Code.

  Further, no costs or administrative expenses which have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superseding Chapter 7 case, and no priority claims are or will be prior to or on a parity with the Super-Priority Claim of the Post-Petition Lender against the Debtor arising under any of the DIP Financing Documents, except for the Carve-Out for professional fees as set forth in the Budget and for fees payable to the U.S. Trustee and to the Clerk of the Court.

  The Debtor believes that good cause has been shown for the entry of the Interim Order to obtain the DIP Loan pending a final hearing on the relief requested herein pursuant to Bankruptcy Rules 4001(c) and (d). The Debtor's need for financing of the type requested herein

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

and as afforded by the Interim Order is immediate and critical. Entry of the Interim Order will minimize disruption of the Debtor's operations and business as a going concern, will preserve the assets of the Debtor's estate, and is in the best interests of the Debtor, its creditors, and its estate.

The Debtor further believes that the terms of the financing are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Agreement is necessary to maintain the value of the Debtor's assets, including going-concern value, and the ability to continue its business and operations. For the foregoing reasons, and in order to assure operating capital, it is necessary for the Debtor to have a post-petition credit facility. Otherwise, the Debtor will be forced to close its operations.

## V.
## BASIS FOR RELIEF REQUESTED

As described above, it is essential to the Debtor's operations that it be granted immediate access to funds. Absent access to the working capital financing that will be available to the Debtor under the proposed DIP Loan, the Debtor will be unable to maintain its business operations or preserve the value of its assets.

The Debtor believes that the terms and conditions of the DIP Loan, the DIP Financing Documents, and the Interim Order, and the related relief requested herein are fair, reasonable, and in the best interests of the Debtor, its estate, and its creditors.

A.   **Approval Under Section 364(c) of the Bankruptcy Code.**

Section 364 of the Bankruptcy Code allows the Debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the Court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super-priority administrative expense status or is secured by a priming lien on certain property and a lien on unencumbered property, or a combination of the foregoing.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

10

The Debtor proposes to obtain financing under the DIP Loan, the DIP Financing Documents, the Interim Order, and the Final Order by providing security interests in and liens on the Post-Petition Collateral pursuant to Section 364(c) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and hearing, that the Debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." In re Plabell Rubber Prods., Inc., 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364(c) financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. See In re Crouse Group, Inc., 71 B.R. 544, 549, modified on other grounds, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

Courts have articulated a three-part test to determine whether a debtor is entitled to Section 364(c) financing:

    a. The debtor is unable to obtain unsecured credit under Section 364(b) (i.e., by allowing a lender only an administrative claim);

    b. The credit transaction is necessary to preserve the assets of the estate; and

    c. The terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender.

See Crouse Group, 71 B.R. at 549. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. See In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986); In re Ames Dep't Stores, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the interim hearing, if necessary, will show that a working capital facility of the type needed in this Chapter 11 case could not have been obtained on an unsecured basis.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

11

**B.     The Debtor Does Not Have an Alternative to the DIP Loan, the DIP Financing Documents, and the Interim Order.**

If necessary, the evidence at the interim hearing will show that a working capital facility of the type needed in this case could not have been obtained on an unsecured basis. Indeed, the potential sources of a credit facility for the Debtor, obtainable on an expedited basis and on reasonable terms, are practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Snowshoe Co., 789 F.2d at 1088.

A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). Id.; In re Plabell, 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, Anchor Sav. Bank FSB v. Sky Valley, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989). Thus, the evidence introduced at the interim hearing will satisfy the requirement of Section 364(c) that unsecured credit was unavailable to the Debtor.

The U.S. Court of Appeals for the Ninth Circuit has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund a central business operation. It is for this reason that Congress specified that hearings concerning the use of cash collateral "shall be scheduled in accordance with the needs of the debtor."

In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (citations omitted).

Because of the Debtor's acute liquidity crisis, the status of the Debtor's operations and collateral base, the need to maintain confidentiality, and the impracticability of pursuing (and paying for) numerous prospective lenders, the Debtor has concluded that, in its business judgment, it was not practicable to try to "shop" the DIP Loan to every possible lender.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

12

However, only the Post-Petition Lender, which is already familiar with the Debtor's business operations, corporate structure, financing arrangements, and collateral base, and which has already performed the necessary due diligence in connection with the DIP Agreement, was able to offer a post-petition credit facility to meet the Debtor's working capital needs on the terms, and within the time frame, that the Debtor needed and pursuant to the DIP Financing Documents.

C.    **Application of the Business Judgment Standard.**

As described above, the Debtor's management has concluded that the DIP Loan, the DIP Financing Documents, and the Interim Order provide the only alternative available under the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943); Ames, 115 B.R. at 38 (in examining requests by a debtor for interim financing, courts apply the same business judgment standard applicable to other business decisions); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. See In re Curlew Valley Assoc., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." Id. at 513-14 (footnotes omitted).

The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and have satisfied the legal prerequisites to borrow under the DIP Loan, the DIP Financing Documents, and the Interim Order. The terms of the DIP Loan are fair

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

13

and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to borrow funds from the Post-Petition Lender on the secured, administrative super-priority basis described above, pursuant to Section 364(c) of the Bankruptcy Code, and take the other actions contemplated by the Interim Order as requested herein.

The Debtor believes that it could not obtain financing from any other lender on terms more favorable than the DIP Loan offered by the Post-Petition Lender, and certainly not before all of the Debtor's limited cash resources were depleted by the search. The Debtor's management exercised their best business judgment in negotiating the DIP Loan, the DIP Financing Documents, and the Interim Order that is presently before the Court.

### D. Request for Modification of the Automatic Stay.

As set forth more fully in the proposed Interim Order, the proposed DIP Loan contemplates a modification of the automatic stay established pursuant to Section 362 of the Bankruptcy Code to permit the Post-Petition Lender to take certain actions. More specifically, the Interim Order provides the Post-Petition Lender with relief from the automatic stay to allow the Post-Petition Lender, inter alia, to enforce certain remedies against the Post-Petition Collateral, without having to obtain any further order of the Bankruptcy Court. The Debtor submits that stay modification provisions of this sort are ordinary and usual features of post-petition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Interim Order and Final Order.

### E. Good Faith.

Section 364(e) of the Bankruptcy Code was designed to "encourage the extension of credit to debtors" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." In re EDC Holding Co., 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

14

court of appeals to reverse the bankruptcy judge"); see also In re North Atlantic Millwork Corp., 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

The DIP Loan is and will be the result of good faith and arm's-length negotiations, with all parties represented by counsel. The Debtor believes that the terms of the DIP Loan are fair and reasonable under the circumstances, and that the Post-Petition Lender is entitled to the benefits of Section 364(e) of the Bankruptcy Code.

F.      **Interim Approval of the DIP Loan.**

Bankruptcy Rule 4001(c)(2) provides that a final hearing on a motion to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

Pursuant to Bankruptcy Rules 4001(c) and (d), the Debtor requests that the Court conduct an expedited interim hearing on the date hereof or as soon as practicable to consider entry of the Interim Order authorizing the Debtor's to borrow an amount sufficient to fund its operating expenses pending a final hearing on the debtor-in-possession financing proposed herein.

The Debtor also respectfully requests that the Court schedule the final hearing on this Motion no later than fourteen (14) days after service of the Motion. Such relief is necessary in order to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to the Debtor's estate.

No prior request for the relief sought herein has been made to this or any other Court.

## VI.
## NOTICE AND REQUEST FOR FINAL HEARING

Notice of this Motion has been given by e-mail, facsimile, overnight delivery, and/or courier to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Nevada; (b) the Office of the Nevada Attorney

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc

15

General; (c) the Office of the United States Attorney General; (d) counsel for Strategic Funding Source, Inc., Vion Operations, LLC, GC-Global Capital Corp., Jay Bloom, and M.J. Dean Construction, Inc., and Tropicana Las Vegas, Inc.; and (e) each of the Debtor's twenty (20) largest unsecured creditors. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests the Court to set a date for the Final Hearing.

## VII.
## CONCLUSION

WHEREFORE, the Debtor respectfully requests (a) entry of an order substantially in the form of the proposed Interim Order attached hereto as Exhibit "A", (b) after a final hearing on the relief requested herein, entry of a Final Order approving the relief requested herein, substantially in the form that shall be filed with the Court, and (c) such other and further relief as is just and equitable.

DATED: October 17th, 2011.

GORDON SILVER

By: /s/
GERALD M. GORDON, ESQ.
MATTHEW C. ZIRZOW, ESQ.
GABRIELLE A. HAMM, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Proposed Attorneys for Murder Inc., LLC

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103164-001/1346821_3.doc