**Entered on Docket
November 09, 2011**

_____
Hon. Bruce A. Markell
United States Bankruptcy Judge
_____

GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail: ghamm@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MURDER INC., LLC,<br><br>Debtor. | Case No.: BK-S-11-26317-BAM<br>Chapter 11<br><br>**Interim Hearing:**<br>Date: October 24, 2011<br>Time: 9:30 a.m.<br><br>**Final Hearing:**<br>Date:   November 7, 2011<br>Time:   8:30 a.m. |

**INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN
EMERGENCY POST-PETITION FINANCING, (2) GRANTING LIENS
AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS,
(3) MODIFYING THE AUTOMATIC STAY, AND (4) GRANTING RELATED RELIEF**

1

Upon the motion (the "Motion") [ECF No. 12] filed with the Court by the above-captioned debtor and debtor-in-possession (the "Debtor") on October 17, 2011 requesting (1) authority to obtain emergency post-petition financing pursuant to Sections 105, 363, and 364 of Title 11 of the United States Code (the "Bankruptcy Code") by entering into that certain Debtor-in-Possession Loan and Security Agreement (the "DIP Agreement") by and among the Debtor and JVLV Holdings, LLC (the "Post-Petition Lender"), together with any related notes, as the same may be amended, supplemented, or otherwise modified from time to time in accordance with this Order and the DIP Agreement, and all instruments, agreements, assignments, and other documents referred to therein or herein or requested by the Post-Petition Lender to give effect to the terms thereof and hereof (the DIP Agreement and such other instruments, agreements, assignments, and other documents, as at any time amended, substituted, or restated, being collectively called the "DIP Financing Documents"), all subject to the terms and conditions set forth herein and therein; (2) granting of certain liens and super-priority administrative expense status to the Post-Petition Lender as specifically set forth in the Motion, in the DIP Agreement, and this Order pursuant to Sections 364(c)(1), (c)(2), (c)(3), and (d)(1) of the Bankruptcy Code; (3) modification of the automatic stay pursuant to Section 362(d) of the Bankruptcy Code; and (4) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and all applicable local bankruptcy rules, scheduling a final hearing (the "Final Hearing") and approving notice with respect thereto. After considering the pleadings filed, including the objections [ECF Nos. 32, 61 and 75] (collectively, the "V/S Objections") filed by Vion Operations, LLC and Strategic Funding Source, Inc. (collectively "V/S"), and the arguments of counsel; the Court having conducted an emergency interim hearing on October 24, 2011 at 9:30 a.m. (the "Interim Hearing") and having orally approved the relief requested on an emergency interim basis; the Court having conducted a final hearing on the Motion on November 7, 2011 at 8:30 a.m. (the "Final Hearing"); the Court having found good and sufficient cause to enter this Order, and, in addition to the findings and fact and conclusions of law orally placed on the record pursuant to Bankruptcy Rule 7052, made applicable pursuant to

2

Bankruptcy Rule 9014, hereby makes the following additional written findings of fact and conclusions of law:

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A. This Court has jurisdiction to entertain the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Sections 105, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(c) and 9014 and LR 4001.

B. On October 17, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is managing its property and operating its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this bankruptcy case and a committee has not yet been appointed.

C. The Debtor has an immediate and ongoing need to obtain financing of the type requested in the Motion to satisfy expenses of operation. Authority to obtain financing from the Post-Petition Lender is necessary for the Debtor to continue the operation of its business as a debtor-in-possession and to preserve the going concern value of its assets. The Debtor will suffer immediate and irreparable harm unless it is immediately authorized to obtain financing in the amount and on the terms and conditions set forth in this Order and in the DIP Financing Documents. Despite diligent efforts, the Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 364(a) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense pursuant to Section 364(c)(1) of the Bankruptcy Code.

D. Subject to the terms and conditions set forth in this Final Order, the Post-Petition Lender is willing to extend to the Debtor advances in the total aggregate amount of up to $375,000, including a reserve of approximately $17,000 (the "DIP Loan").

E. The Post-Petition Lender has expressed its desire to provide post-petition financing to the Debtor in order to provide working capital to the Debtor. A condition to the

willingness of the Post-Petition Lender to fund the DIP Loan is that, as security for the prompt payment and performance of the DIP Loan and all interest, fees, expenses, and charges at any time payable by the Debtor under this Order (collectively, the "DIP Obligations"), the Post-Petition Lender:

    1.    Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first-priority lien, subject only to the Carve-Out in all unencumbered assets of the Debtor;

    2.    Pursuant to Sections 364(c)(3) of the Bankruptcy Code, a perfected junior lien in all assets of the Debtor that are subject to a valid and unavoidable encumbrance in existence as of the Petition Date, which valid liens and encumbrances include any and all liens or interests of V/S, to the extent they existed as of the Petition Date, in the Debtor's assets and any subsequent determination of V/S lien rights, and any liens that are subsequently perfected pursuant to Section 546(b) of the Bankruptcy Code; and

    3.    Pursuant to Section 364(d)(1) of the Bankruptcy Code, a first-priority, senior priming lien on all monies and funds of the Debtor which may be due, refunded, collected, or otherwise received by the Debtor pursuant to that certain Legal Representation Agreement dated September 29, 2011, by and between the Debtor and Gordon Silver (the "Engagement Agreement").

F.    The Court finds that notice of the Motion, as it relates to the entry of this Order, is sufficient for all purposes under the Bankruptcy Code, the Bankruptcy Rules, and the local rules of this Court, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(c) and (d) and Local Rule 4001(e), and that no further notice is necessary.

G.    Good cause has been shown for the entry of this Order and authorization for the Debtor to execute the DIP Financing Documents (and ancillary documents) and obtain the DIP Loan on the relief requested in the Motion pursuant to Bankruptcy Rules 4001(c)(2) and (d)(2). The Debtor's need for financing of the type afforded by this Final Order and the DIP Agreement is immediate and critical. Entry of this Final Order will minimize disruption of the Debtor's business and operations as a going concern and is in the best interests of the Debtor, its creditors,

and its bankruptcy estate. The terms of the financing authorized hereby are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

H. Prior to the Petition Date, the Post-Petition Lender made certain loans and other extensions of credit to the Debtor pursuant to and in accordance with the terms and conditions of certain promissory notes, security agreement, and related documents (collectively, the "Notes"). All rights of the Post-Petition Lender to assert any and all liens, claims, and interests related to the Notes and any security interests related thereto are hereby preserved in their entirety.

I. Based upon the record presented, the Court finds that the DIP Agreement and the DIP Loan to be evidenced thereby have been negotiated in good faith and at arm's length between the Debtor and the Post-Petition Lender and the DIP Loan shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

Accordingly, it is hereby ORDERED and ADJUDGED that:

1. **Findings and Conclusions.** The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusion of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2. **Notice.** Due, proper, timely, adequate, and sufficient notice of the Motion and the transactions contemplated thereby has been provided to all parties entitled thereto and such notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion or the transactions contemplated thereby is or shall be required.

3. **Authorization of Financing.** Subject to the terms and conditions of this Order, the Debtor shall be, and hereby is, authorized (a) to execute the DIP Agreement, which is approved hereby in all respects, in substantially similar form attached as **Exhibit "B"** to the Motion and all other DIP Financing Documents requested by the Post-Petition Lender to give effect to the terms thereof and hereof; (b) to receive in one or more advances from the Post-

5

Petition Lender funding the DIP Loan to be used in accordance with the budget attached as an exhibit to the DIP Agreement (the "Budget"); (c) to pay all interest, fees, expenses, and other obligations provided for under this Order and the DIP Financing Documents, including, but not limited to, paying to the Post-Petition Lender a DIP Loan commitment fee in the amount of $25,000, which shall be fully earned and due upon the entry of this Order and shall be non-refundable when paid; and (d) to satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof. Notwithstanding anything to the contrary in this Order, in no event shall the Post-Petition Lender be obligated to make any advances comprising the DIP Loan if at the time of a requested advance an Event of Default (as such term is defined in the DIP Agreement) or a default under this Order exists. Proceeds of the DIP Loan may be used to satisfy operating expenses to the extent necessary to avoid immediate and irreparable harm to the Debtor, which, for purposes hereof, shall mean proceeds used to pay one or more items identified on the Budget agreed upon by the Debtor and the Post-Petition Lender. The Post-Petition Lender shall not have any obligation or responsibility to monitor the Debtor's use of proceeds of the DIP Loan and may, but is not required to, rely on the Debtor's representations that the amount of any advances requested by the Debtor, and the use thereof, are in accordance with the requirements of this Order and the DIP Financing Documents.

   4. **Post-Petition Liens.** To secure the prompt payment and performance of the DIP Obligations, the Post-Petition Lender shall have, and is hereby granted, effective on and after the Petition Date:

   a. Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first-priority lien, subject only to the Carve-Out in all unencumbered assets of the Debtor;

   b. Pursuant to Sections 364(c)(3) of the Bankruptcy Code, a perfected junior lien in all assets of the Debtor that are subject to a valid and unavoidable encumbrance in existence as of the Petition Date, which valid liens and encumbrances include any and all liens or interests of V/S, to the extent they existed as of the Petition Date, in the Debtor's

assets and any subsequent determination of V/S lien rights, and any liens that are subsequently perfected pursuant to Section 546(b) of the Bankruptcy Code; and

  c. Pursuant to Section 364(d)(1) of the Bankruptcy Code, a first-priority, senior priming lien on all monies and funds of the Debtor which may be due, refunded, collected, or otherwise received by the Debtor pursuant to the Engagement Agreement.

The Debtor's assets subject to the Post-Petition Liens shall hereinafter be referred to as and shall constitute "Post-Petition Collateral." Wherever in this Order reference is made to any property or assets of the Debtor (including, without limitation, any of the Post-Petition Collateral), and unless otherwise limited by the DIP Agreement or this Order, such reference shall be understood to include all property of the estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code. Notwithstanding the foregoing provisions of this paragraph or anything to the contrary in the DIP Financing Documents, the Post-Petition Liens shall not attach to any of the following property: (a) any claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (b) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions.

5. **Super-Priority Claim.** In accordance with Sections 363(c), 364(c)(1), and 364(d) of the Bankruptcy Code, the Post-Petition Obligations shall constitute claims (the "Super-Priority Claims") with priority in payment over any and all costs and administrative expenses including, without limitation, the kind specified in Sections 105, 326, 328, 330, 331, 503(b) (with the exception of (b)(1)(A)(i) solely for payroll expenses incurred after the commencement of the Bankruptcy Case as set forth in the Budget, through the Termination Date and Section 503(b)(1)(B) solely for sales and admission taxes incurred after the commencement of the Bankruptcy Case through the Termination Date), 506(c), 507(a), 507(b), 726, and 1114 of the Bankruptcy Code, or any other similar section of the Bankruptcy Code, but excluding the fees of the U.S. Trustee and the Carve-Out, and any liens of V/S that existed on the Petition Date to the extent determined by a later hearing or further order of Court, all as more fully set forth herein below, senior to the rights of the Debtor, any successor trustee, successor entity, and/or any creditor, in this case or any subsequent proceeding under the Bankruptcy Code. Subject only to

the fees of the U.S. Trustee and the Carve-Out, and any liens of V/S that existed on the Petition Date to the extent determined by a later hearing or further order of Court, no cost or expense of administration under Section 105, 364(c)(1), 503(b) (with the exception of (b)(1)(A)(i) solely for payroll expenses incurred after the commencement of the Bankruptcy Case as set forth in the Budget, through the Termination Date and Section 503(b)(1)(B) solely for sales and admission taxes incurred after the commencement of the Bankruptcy Case through the Termination Date), 506(c), or 507(b) of the Bankruptcy Code, or otherwise, including those resulting from the conversion of this case pursuant to Section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the Super-Priority Claims.

6. **Carve-Out.** The liens and securities interests granted to the Post-Petition Lender will be valid, enforceable, and perfected security interests and liens, but shall be subject and subordinate to allowed claims of professionals of the Debtor and any official committee appointed in this case, to the extent such claims are set forth in the Budget, but in no event shall the aggregate amount thereof exceed (a) the aggregate of all sums held in pre-petition retainer by Gordon Silver together with a sum not to exceed $100,000, to the extent that such fees and disbursements are allowed by the Court, and (b) in the event that an unsecured creditors committee is appointed in this case, a sum not to exceed $50,000 for fees and disbursements of its professionals allowed by the Court together with any administrative expense allowed pursuant to Section 503(b)(3)(F) of the Bankruptcy Code (collectively, the "Carve-Out").

7. **Waiver of Surcharge.** Subject to entry of the Final Order, no costs or expenses of administration shall be imposed upon the Post-Petition Lender, or any of the Post-Petition Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the Post-Petition Lender, and no such consent shall be implied from any action or inaction by the Post-Petition Lender. Nothing contained in this Order shall be deemed to be consent by the Post-Petition Lender to any charge, lien, assessment, or claim against the Post-Petition Collateral under Section 506(c) of the Bankruptcy Code or otherwise.

8. **V/S Reservation of Rights.** Except as ordered in paragraph 3 of the *Final Order Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001(b) Re: Cash Collateral* with respect

to Section 552(b) of the Bankrutpcy Code, the relief granted herein is without prejudice to the rights of V/S to assert any and all liens or interest in any of the Debtor's assets that may constitute V/S collateral, any subsequent determination of V/S lien rights, and V/S rights to seek adequate protection thereto.

9. **Preservation of Rights.**

   a. If this Chapter 11 case is dismissed or converted, then neither the entry of this Order nor the dismissal or conversion of this Chapter 11 case shall affect the rights of the Post-Petition Lender under the DIP Financing Documents or under this Order, and all such rights and remedies of the Post-Petition Lender shall remain in full force and effect as if this Chapter 11 case has not been dismissed or converted. It shall constitute an Event of Default if the Debtor seeks, or if there is entered, any order dismissing this Chapter 11 case. If an order dismissing this Chapter 11 case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the Post-Petition Liens and the Super-Priority Claims granted to and conferred upon the Post-Petition Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full and the Post-Petition Liens and the Super-Priority Claims shall, notwithstanding such dismissal, remain binding on all interested parties; and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Post-Petition Liens and the Super-Priority Claim referred to herein.

   b. The provisions of this Order shall be effective immediately upon entry of this Order by the Court, and the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting this Chapter 11 case from Chapter 11 to Chapter 7. No reorganization plan proposed by the Debtor, or an insider of the Debtor, shall alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Financing Documents or alter or abrogate any of the rights or benefits afforded to the Post-Petition Lender by this Order, the DIP

Financing Documents, or the Post-Petition Liens, unless otherwise agreed to by the Post-Petition Lender.

  c. In no event shall (i) the Post-Petition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Post-Petition Collateral securing any of the DIP Obligations; (ii) the Post-Petition Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of a the Debtor's respective estates pursuant to Section 551 of the Bankruptcy Code; and (iii) any person or entity who pays (or, through the extension of credit to the Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted to or in favor of, or conferred upon, the Post-Petition Lender by the terms of the DIP Financing Documents or this Order, until such time as all of the Pre-Petition Claims and all of the DIP Obligations are paid in full.

  10. **Automatic Perfection of the Post-Petition Liens.** This Order shall be sufficient and conclusive evidence of the priority, perfection, validity, and enforceability of all of the liens and security interests in and upon granted to the Post-Petition Lender as set forth herein and in the DIP Financing Documents. The Post-Petition Lender shall not be required to file any financing statement, mortgage, deed of trust, assignments of rents, notice of lien, and/or any similar document or take any other action (including possession of any of the Post-Petition Collateral) in order to validate the perfection of the Post-Petition Liens. If the Post-Petition Lender shall, in its discretion, elect for any reason to file any such financing statements, mortgages, deeds of trust, assignments of rent, and/or other documents with respect to such security interests and liens, the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements, mortgages, deeds of trust, assignments of rents, and/or other agreements, documents, or instruments upon the Post-Petition Lender's request and the filing, recording, or service thereof (as the case may be) of such financing statements, or other agreements, documents, or instruments shall be deemed to have been made at the time of and on the Petition Date. The Post-Petition Lender may, in its discretion, file a certified copy of this

Order in any filing or recording office in any county or other jurisdiction in which the Debtor has an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment, or perfection of the security interests and liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court or other federal court (provided that the Post-Petition Lender may still take such steps as it wishes to perfect the security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order).

11. **Reporting and Inspection.** The Debtor shall provide to the Post-Petition Lender, if so requested in writing, all reporting with respect to the Post-Petition Collateral, the Post-Petition Liens, and other matters that the Debtor is required to provide to the Post-Petition Lender pursuant to the terms of the DIP Agreement. The Post-Petition Lender shall be authorized, at any time or times (on reasonable notice to the Debtor), to enter upon the premises of the Debtor, to inspect the Post-Petition Collateral, to inspect the books and records of the Debtor (including, without limitation, records pertaining to the Post-Petition Collateral, the Post-Petition Liens, and the Debtor's business operations), to make recommendations to the Debtor regarding the Debtor's cost-cutting measures and the implementation thereof as contemplated by the Budget, and to discuss any of the foregoing with the Debtor's officers or employees, all without being deemed to be in control of or a fiduciary for the Debtor.

12. **Professional Fees.** No DIP Loan, Post-Petition Collateral, or any of the proceeds of any of the foregoing shall be used by any person or entity to pay compensation or expense reimbursement to any professional retained by or on behalf of the Debtor, any committee appointed in this case, examiner, or trustee in connection with (a) the assertion or joinder in any claim, counterclaim, action, proceeding application, motion, objection, defenses, or other contested matter, the purpose of which is to seek any order, judgment, determination, or similar

relief (i) invalidating, setting aside, avoiding, subordinating, in whole or in part, (x) the Pre-Petition Claims or the DIP Loan owed to the Post-Petition Lender, or (y) any of the Post-Petition Lender's security interests or liens in or upon the assets of the Debtor, or (ii) preventing, hindering, or delaying, whether directly or indirectly, the Post-Petition Lender's assertions or enforcement of its security interests or liens or realization upon any of the Post-Petition Collateral; (b) selling or otherwise disposing of any of the Post-Petition Collateral, or incurring any indebtedness not permitted under the DIP Agreement, without the Post-Petition Lender's prior written consent; (c) arising after the conversion of this bankruptcy case to a case under Chapter 7 of the Bankruptcy Code; (d) arising after appointment of a trustee or a receiver; and/or (e) associated with any litigation against the Post-Petition Lender.

13. **Reimbursement of Expenses.** All costs and expenses incurred by the Post-Petition Lender in connection with the review, negotiation, and/or drafting of this Interim Order and the DIP Financing Documents, or any amendments thereto, the preservation, protection, and enforcement of the Post-Petition Lender's rights hereunder and, under the DIP Financing Documents or in the collection of the DIP Obligations, including, without limitation, all filing and recording fees, all documentary taxes, if any, and reasonable attorneys' fees incurred in connection with any of the foregoing, shall form a part of the DIP Obligations, without any further order of the Court and shall be paid by the Debtor in accordance with the terms of this Interim Order and the DIP Financing Documents, as the case may be.

14. **Events of Default; Remedies.**

   a. The occurrence of any one or more of the following events or conditions shall constitute an Event of Default: (i) the occurrence of an "Event of Default" under (and as defined in) the DIP Agreement; (ii) the failure of the Debtor to duly and punctually to observe, perform, or discharge any obligation or duty imposed upon it by this Order; (iii) the appointment in this Chapter 11 case of a trustee or an examiner with expanded powers (powers beyond those expressly set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code without the written consent of the Post-Petition Lender; (iv) the dismissal of this Chapter 11 case; (v)

the conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code (whether proposed by the Debtor or any other interested party); (vi) the filing of a motion by the Debtor to convert its Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code or to dismiss its Chapter 11 case; (vii) this Order is altered, amended, vacated, supplemented, modified (in each case, without the Post-Petition Lender's written consent), stayed, or reversed on appeal, or the Debtor shall file any motion to alter, amend, vacate, supplement, or modify this Order, in each case without the Post-Petition Lender's prior written consent; (viii) the Debtor shall seek approval of the Court for the sale or other disposition, outside of the ordinary course of the Debtor's business, of any of the Post-Petition Collateral, or shall compromise, forgive, or release any of the Post-Petition Collateral without the Post-Petition Lender's written consent; (ix) relief from stay shall be granted to allow a creditor (other than the Post-Petition Lender) to foreclose upon any Post-Petition Collateral; (x) the Debtor shall file a motion or other request with the Court seeking authority to use any cash proceeds of the Post-Petition Collateral or to obtain any financing under Section 364(d) of the Bankruptcy Code secured by a priming lien, or lien of equal priority with liens granted to the Post-Petition Lender hereunder, upon any Post-Petition Collateral, in each case without the Post-Petition Lender's prior written consent; and (xi) an order in form and substance satisfactory to the Post-Petition Lender is not entered by the Court at the Final Hearing (or such later period as shall be acceptable to the Post-Petition Lender).  In any such event, the Post-Petition Lender shall be fully authorized, in its sole discretion, to cease funding the DIP Loan (to the extent not theretofore fully funded), to accelerate the maturity and demand payment of all DIP Obligations, to hold any balances in any accounts of the Debtor, to enforce the Post-Petition Liens with respect to the Post-Petition Collateral, to effect offsets of bank account balances, and to take all other action and exercise all other remedies under the DIP Financing Documents and applicable law that may be necessary or deemed appropriate by the Post-Petition Lender to collect any of the DIP Obligations, to proceed against or realize upon all or any portion of the Post-Petition Collateral as if this Chapter

11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Financing Documents and this Order. If and to the extent ordered by the Court at such emergency hearing, the Post-Petition Lender thereafter may enforce the security interests and liens granted under the DIP Financing Documents with respect to the Post-Petition Collateral and take all other actions and exercise all other remedies under the DIP Financing Documents, applicable law, and this Order which may be necessary or deemed appropriate by the Post-Petition Lender to collect any of the DIP Obligations and to proceed against or realize upon all or any portion of the Post-Petition Collateral as if this Chapter 11 case or any superseding Chapter 7 case were not pending.

b. In no event shall the Debtor be authorized, after the occurrence of an Event of Default, to use any proceeds of the DIP Loan to pay any costs or expenses of administration in this Chapter 11 case or in any superseding Chapter 7 case until such time as all of the DIP Obligations are paid and satisfied in full in accordance with the terms of the DIP Financing Documents and this Order. Thereafter, any remaining balance of payments or proceeds coming into the possession of the Post-Petition Lender shall be turned over to the Debtor.

c. The rights, remedies, powers, and privileges conferred upon the Post-Petition Lender pursuant to this Order shall be in addition to and cumulative with those contained in the DIP Financing Documents.

15. **No Waiver.** Nothing herein shall be deemed to be a waiver by the Post-Petition Lender of its rights to request any other relief or additional and further protection of its interests in any property of the Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner in this case or the dismissal of this case, or to request any other relief in this case; nor shall anything in this Order or the DIP Financing Documents constitute an admission by the Post-Petition Lender of the quantity, quality, or value of any Post-Petition Collateral securing the DIP Obligations or constitute a finding of adequate protection with respect to the interests of the Post-Petition Lender in any Post-Petition Collateral. The Post-Petition Lender shall be deemed to have reserved all rights to assert entitlement to the protections

and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, or other disposition of any of the Post-Petition Collateral, to the extent that the protection afforded by this Order to the Post-Petition Lender's interests in any Post-Petition Collateral proves to be inadequate.

16. **Modification of Automatic Stay.** The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified, lifted and terminated as to the Post-Petition Lender to the extent necessary to implement the provisions of this Order and the DIP Financing Documents, thereby permitting the Post-Petition Lender to receive collections of the Post-Petition Collateral for application to the DIP Obligations as provided in the DIP Financing Documents, to file or record any UCC-1 financing statements and other instruments and documents evidencing the security interests and liens granted to the Post-Petition Lender in the Post-Petition Collateral and to enforce its security interests and liens upon default subject to the provisions of this Order and the DIP Financing Documents.

17. **Modifications.** The Debtor and the Post-Petition Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any modifications of the DIP Financing Documents without further order of the Court on the following conditions: (a) the modifications must not materially change the terms of the DIP Agreement, including the interest rate, maturity date, events of default, and remedies; (b) copies of the modifications must be served upon counsel for any statutory committees appointed; and (c) any material modifications must be approved by the Court.

18. **Effect of Appeal.** Consistent with Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter modified, vacated, or stayed:

    a. such stay, modification, or vacation shall not affect the validity of any obligation, indebtedness, liability, security interest, or lien granted or incurred by the Debtor to the Post-Petition Lender prior to the effective date of such stay, modification, or vacation, or the validity, enforceability, or priority of any security interest, lien, priority, or right authorized or created under the original provisions of this Order or pursuant to the DIP Financing Documents; and

    b.  any indebtedness, obligation, or liability incurred by the Debtor to the Post-Petition Lender under the DIP Financing Documents prior to the effective date of such stay, modification, or vacation shall be governed in all respects by the original provisions of this Order, and the Post-Petition Lender shall be entitled to all the rights, remedies, privileges, and benefits, including the Post-Petition Liens and the Super-Priority Claims granted herein and pursuant to the DIP Financing Documents, with respect to any such indebtedness, obligation, or liability. All DIP Loan advances under the DIP Financing Documents are made in reliance upon this Order, and, therefore, the indebtedness resulting from such DIP Loan prior to the effective date of any stay, modification, or vacation of this Order cannot (i) be subordinated, (ii) lose the priority of the Post-Petition Liens or the Super-Priority Claims, or (iii) be deprived of the benefit of the status of the Post-Petition Liens, the Super-Priority Claims, or any other liens or claims granted to the Post-Petition Lender under this Order or the DIP Financing Documents, as a result of any subsequent order in this Chapter 11 case, or any superseding case, of the Debtor.

  19.  **Ventre Compensation.** Notwithstanding the Court's ruling at the Interim Hearing with respect to the denial of any post-petition compensation to the Debtor's principal, Louis Ventre, which denial was without prejudice pending the Final Hearing, Mr. Ventre shall be allowed and be paid his normal annual salary of $150,000 per year starting on and after the Petition Date, subject to the terms of the Budget and this Order; *provided, however*, that the Debtor's counsel shall consult with the Office of the U.S. Trustee (the "U.S. Trustee") with respect to such compensation and should the U.S. Trustee have any issue with such compensation, their office shall be permitted to file an objection to such payments within seven (7) days of entry of this Order. Upon the filing of such objection, all compensation to Mr. Ventre shall cease pending a hearing to decide the issue of further compensation to Mr. Ventre.

  20.  **Continued Final Hearing.** In light of the agreement to this Order, the continued final hearing on November 8, 2011 at 4:00 p.m. is hereby VACATED.

**IT IS SO ORDERED.**

| | |
|---|---|
| PREPARED AND SUBMITTED: | APPROVED/~~DISAPPROVED~~: |
| By: /s/ Matthew C. Zirzow<br>GERALD M. GORDON, ESQ.<br>MATTHEW C. ZIRZOW, ESQ.<br>GABRIELLE A. HAMM, ESQ.<br>GORDON SILVER<br>3960 Howard Hughes Pkwy., 9th Floor<br>Las Vegas, Nevada 89169<br><br>*Proposed Attorneys for Debtor* | By: /s/ Bryan L. Elwood<br>BOB L. OLSEN, ESQ.<br>KARA B. HENDRICKS, ESQ.<br>GREENBERG TRAURIG, LLP<br>3773 Howard Hughes Pkwy.<br>Suite 400 North<br>Las Vegas, Nevada 89169<br><br>BRYAN L. ELWOOD, ESQ.<br>(Admitted Pro Hac Vice)<br>GREENBERG TRAURIG, LLP<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br><br>DAVID C. PECK, ESQ.<br>(Admitted Pro Hac Vice)<br>GREENBERG TRAURIG, LLP<br>401 East Las Olas Blvd., Suite 2000<br>Fort Lauderdale, Florida 33301<br><br>*Attorneys for JVLV Holdings, LLC* |
| APPROVED/~~DISAPPROVED~~: | APPROVED/~~DISAPPROVED~~: |
| By: /s/ James O. Johnston<br>JAMES O. JOHNSTON, ESQ.<br>(Admitted Pro hac Vice)<br>DEWEY & LEBOEUF, LLP<br>333 South Grand Ave., 26th Floor<br>Los Angeles, California 90071<br><br>JENNIFER L. SANDERS, ESQ.<br>GLASER, WEIL, FINK, JACOBS,<br>HOWARD, AVCHEN & SHAPIRO, LLP<br>3763 Howard Hughes Pkwy., Suite 300<br>Las Vegas, Nevada 89169<br><br>*Attorneys for Tropicana Las Vegas, Inc.* | By: /s/ James E. Van Horn<br>LAUREL E. DAVIS, ESQ.<br>FENNEMORE CRAIG, P.C.<br>300 South Fourth Street, #1400<br>Las Vegas, Nevada 89101<br><br>DAVID I. SWAN, ESQ.<br>(Pro Hac Vice to be submitted)<br>JAMES E. VAN HORN, ESQ.<br>(Pro Hac Vice to be submitted)<br>CULLEN ANN DRESCHER, ESQ.<br>(Pro Hac Vice to be submitted)<br>MCGUIRE WOODS, LLP<br>7 Saint Paul Street, Suite 1000<br>Baltimore, Maryland 21202<br><br>*Attorneys for Vion Operations, Inc. and Strategic Funding Source, Inc.* |

| | |
|---|---|
| APPROVED/DISAPPROVED: | APPROVED/~~DISAPPROVED~~: |
| By: __No Response__<br>RYAN J. WORKS, ESQ.<br>MCDONALD CARANO WILSON, LLP<br>2300 West Sahara Ave., Suite 1000<br>Las Vegas, Nevada 89102<br><br>*Attorneys for GC-Global Capital Corp.* | By: __/s/ Martin A. Little__<br>BRIAN E. HOLTHUS, ESQ.<br>MARTIN A. LITTLE, ESQ.<br>JOLLEY URGA WIRTH WOODBURY STANDISH<br>3800 Howard Hughes Pkwy<br>Wells Fargo Tower, 16th Floor<br>Las Vegas, Nevada 89169<br><br>*Attorneys for M.J. Dean Construction* |

### LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

###